**John Samuel MILOSZEWSKI and Darla J. Miloszewski, Plaintiffs,**

**v.**

**SEARS ROEBUCK & CO. et al., Defendants.**

**No. G–290–71 C.A.**

United States District Court,
W. D. Michigan, S. D.

June 30, 1972.

George Hamilton Foley, Lansing, Mich., for plaintiffs.

Foster, Lindemer, Swift & Collins, Lansing, Mich., for defendants; David C. Coey, Lansing, Mich., of counsel.

## OPINION

FOX, Chief Judge.

In this action, the plaintiffs allege that the defendants have, under color of state law, deprived them of rights secured by the United States Constitution. Plaintiffs found jurisdiction on 42 U.S.C. § 1983, and 28 U.S.C. § 1343.

Presently before this Court is the defendants' motion to dismiss. This motion argues that the plaintiffs were not deprived of a right, privilege, or immunity secured by the United States Constitution. Therefore, it is argued that jurisdiction cannot be grounded on 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and that this Court lacks jurisdiction over the subject matter.

The complaint alleged that on August 6, 1971 the defendants, acting pursuant to Michigan District Court Rule 757 [1] broke into the home of plaintiffs and seized a television set. It is further alleged that the defendants pushed plaintiff Darla Miloszewski, threatened her with physical harm and subjected her to verbal abuse. Finally, it is alleged that the television, at the time it was seized, was the property of plaintiffs.

In support of the motion to dismiss the defendants argue that the Fourth Amendment should not be construed to protect an individual from a search and seizure related to a civil action brought by a creditor to recover possession of the seized property. They argue that the Fourth Amendment only protects people from unreasonable searches and seizures related to a criminal proceeding, from unreasonable searches and seizures related to a forfeiture or penalty proceeding and from unreasonable searches and seizures related to the enforcement of health, housing or safety laws; not from searches and seizures related to a civil proceeding.

The plaintiffs argue that the above distinction is illogical. Plaintiffs contend that the effect is the same to the individual whether the sheriff breaks down his door in connection with a civil or a criminal proceeding. In either case, it is argued, the person has been subjected to an unreasonable search and seizure, and his constitutional rights have been violated. Plaintiffs further argue that Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 319 (1967), show that the protections of the Fourth Amendment have not been narrowly construed.

The Fourth Amendment provides that, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." This Amendment is enforceable against the states through the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). This Court is persuaded that this Amendment applies to the search and seizure involved in this case.

As the Supreme Court stated in Camara v. Municipal Court, supra:

The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. (emphasis added.) (387 U.S. at page 528, 87 S.Ct. at page 1730.)

---

1. Michigan District Court Rule 757 provides that: .2 Claiming the Delivery. The plaintiff in an action to recover the possession of personal property may, at the time the summons is issued, or at any time before the answer, claim the delivery of such property to him as provided in these rules. (3). Upon the receipt of such bond and endorsed affidavit, the court officer shall proceed to seize and take into his custody the property . . ., and . . . may, after having publicly demanded deliverance thereof, break open any building in which such property may be concealed.

It should be noted that a refusal to submit to such a search and seizure might lead to criminal prosecution under M.C. L.A. § 750.479.

If a sheriff may not violate the privacy and security of a man's home by conducting a warrantless search to effectuate the state's interest in preventing crime, he should not be able to violate that privacy and security by a warrantless search to aid a creditor. As the Supreme Court states in Camara v. Municipal Court, supra:

It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. (at page 530, 87 S.Ct. at page 1732.)

Therefore, this Court is convinced that the District Court for the Northern District of New York was correct in Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D. New York 1970), when that Court stated:

The argument that the Fourth Amendment does not apply, is supported by neither good sense nor law. If the Sheriff cannot invade the privacy of a home without a warrant when the state interest is to prevent crime, he should not be able to do so to retrieve a stove or refrigerator about which the right to possession is disputed. (at page 722.)

 If the protections of the Fourth Amendment are held to apply to this case, it cannot be doubted that the search and seizure involved here was unreasonable. First, this was a warrantless search; such searches are constitutionally suspect. As the Supreme Court stated in Camara v. Municipal Court, supra:

[O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant. (387 U.S. at pages 528–529, 87 S.Ct. at page 1731.)

Secondly, it is to be noted that plaintiffs allege that this was a forceable search accompanied by a seizure of a television set which belonged to them. Without deciding whether a search not involving force accompanied by the seizure of property admittedly belonging to the creditor would be reasonable, this Court is convinced that a search and seizure such as that allegedly involved in this case is surely "unreasonable".

This search and seizure, and the defendants' argument that the reach of the Fourth Amendment should be limited illustrate the presumptiveness of corporations such as the defendant. This corporation is willing to trample on human rights to obtain what it believes to be its property. Courts must concern themselves with such twisting of values, and protect those rights which the spirit of the law is intended to protect.[2]

The spirit of the Fourth Amendment reflects a deep concern for the right to be secure in one's home. This case sets that right against the defendants' desire to retrieve, prior to trial, a television set which it claims. This is a case of barbarous unawareness of plaintiffs' right to privacy by a creature, which exists by grace of a state legislature, acting as a sovereign in a manner forbidden to a

---

2. "The first point that must be made is that despite the vast growth of corporate power the courts, except in the area of racial discrimination, have failed to hold that corporations are subject to the Bill of Rights. A mere statement of this fact may not seem very significant; corporations, after all, are not supposed to exercise the governmental powers with which the Bill of Rights was concerned. But this has been radically changed by the emergence of the public-private state.

Today private institutions do exercise governmental power; more, indeed, than 'government' itself . . . . . We have two governments in America, then— one under the Constitution and a much greater one not under the Constitution. . . . . In short, the *inapplicability* of our Bill of Rights is one of the crucial facts of American life today." C. Reich, The Greening of America, 127–28 (Bantam ed. 1971).

sovereign state. The sanctity of the privacy of the individual and his home must prevail over this grasping for property and profits.[3]

This sanctity and right to privacy are human values and human rights, and the value of defendants' attempt to collect a debt by an unlawful search palls into insignificance by comparison with plaintiffs' human right of privacy. The value of a single human being with an eternal destiny is incomparable in comparison to that of an artificial being with a finite destiny. The sooner we adjust our values accordingly, the nearer we will come to establishing justice.[4]

Looking at the spirit of the Fourth Amendment and remembering that the law is an axiological not a mechanical science, this Court must conclude that the alleged search and seizure was unreasonable under the Fourth Amendment. This result will adequately protect the rights which the Fourth Amendment was intended to protect. Also, remedies formerly available by writ of replevin with the intervention of judicial officials will still be available. Like Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), this result will not totally abolish a remedy, but merely insure that the use of the remedy be tempered by the judgment of impartial judicial officials.

■ Having found that the protections of the Fourth Amendment apply to this search, and that the alleged search and seizure would be unreasonable, this Court concludes that the plaintiffs may have been deprived of a right, privilege, or immunity secured by the Constitution. Therefore, this Court has jurisdiction to decide this case under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

Since this Court finds that its jurisdiction is sustained by reference to the Fourth Amendment, it is not necessary for it to consider the due process claims

---

3. As Blackstone had put it, "the public good is in nothing more essentially interested than in the protection of every individual's private rights." (Pound, The Spirit of the Common Law, pg. 53.)

Nothing shows the soundness of the Founding Fathers more clearly than in their use of the phrase "life, liberty and the pursuit of happiness." In spite of the influence on them of John Locke, they did not adopt the Lockean rhythm of "lives, liberties and estates." As Bishop Sheen has pointed out in his Philosophy of Religion,[30] it was Jefferson who caused the words "pursuit of happiness" to be substituted for the word "property" emphasized by Samuel Adams, who was a follower of Locke. Property may be one element of happiness, but it is not all.

When some of the later judges came to identify "happiness" with "property," they actually departed from the spirit of an overwheming majority of the early Americans. Justice Brewer was right in maintaining that the Constitution should be read in the light of the Declaration of Independence, but I doubt very much whether his reading of the Declaration was right, when he spoke of the inalienable rights in terms of "the sacredness of life, of liberty, and of property." [31]

Property is, in a derivative sense, a natural right, but there is a hierarchy of values even among natural rights. Important as it is, it does not belong to the same level as life and liberty. Life and liberty are ends in themselves, while property is only an instrumental value. I think many of the erroneous decisions rendered by the Supreme Court of the United States in the last quarter of the nineteenth century and the first decades of the present century can be traced to an overemphasis on the rights of property at the expense of the personal rights of men and the legitimate demands of the common good. Many such decisions have, happily, been overruled by the same Court. J. Wu, Fountain of Justice, 129–30 (Sheed and Ward 1953).

4. Nor were Americans indulging in rhetoric when they declared, "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness." They meant exactly what they said. They were a generous, sincere, freedom-loving and God-fearing people. They saw these truths so clearly and felt so deeply about them that they were willing to stake their lives upon them. Id. pg. 127.

raised by the plaintiffs. Nevertheless, the Court notes that these are substantial issues, which may be sufficient to uphold its jurisdiction.[5]

Defendants' motion to dismiss is hereby denied.

5. See Fuentes v. Shevin, Attorney General of Florida, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).