**Leland W. BORMANN, Plaintiff,**

v.

**Fred H. TOMLIN et al., Defendants.**

**No. 77–3133.**

United States District Court,
S. D. Illinois, S. D.

Nov. 15, 1978.

Leland W. Bormann, pro se.

J. William Roberts, First Asst. State's Atty., Sangamon County, Springfield, Ill., for defendants.

## MEMORANDUM ORDER

J. WALDO ACKERMAN, District Judge.

Before me are cross-motions pursuant to Fed.R.Civ.P. 56 for summary judgment on the question of liability. After reviewing the affidavits and memoranda of the parties and considering oral arguments, it appears that as to several issues there is no question of material fact and partial summary judgment must be granted as to them. Plaintiff, Leland W. Bormann, received statements from the Sangamon County Treasurer's office over a period of years notifying him that he was delinquent in payment of personal property taxes. A distress warrant was issued by the Sangamon County Treasurer, Fred H. Tomlin, as ex-officio County Collector pursuant to Ill. Rev.Stat. ch. 120, §§ *inter alia* 651, 652, 657, and 692 commanding the deputy collectors to seize and sell enough of the plaintiff's

property to cover the delinquent taxes and costs. On March 17, 1977, the distress warrant was served on plaintiff by defendant Challis, who was accompanied by defendant Cooper. Plaintiff refused at that time to make payment. Defendant Cooper, without plaintiff's permission, opened plaintiff's garage door and seized plaintiff's 1967 automobile. Defendant Ellis is a Deputy Sheriff of Sangamon County who was called to the Bormann home and was present during the search and seizure of the garage. On the afternoon of March 17, plaintiff came to the Sangamon County Treasurer's office and was allowed to take his personal effects from the car. On March 18, plaintiff was allowed to retake the impounded auto upon payment of $100 and agreement to pay $25.00 per month until the taxes were paid. Plaintiff filed this action in Federal Court seeking damages under 42 U.S.C. § 1983 for an alleged unconstitutional search and seizure of his garage.

In summary, it is my opinion, based on the Fourth Amendment to the United States Constitution, as construed by the United States Supreme Court, that the Illinois statutes to the extent they may be construed to allow search and seizure on private property to collect delinquent personal property taxes without a valid search warrant issued upon probable cause by a judicial officer is unconstitutional. My opinion is based on the following legal analysis.

## FEDERAL TAX INJUNCTION ACT

■ I must initially consider whether the Tax Injunction Act, 28 U.S.C. § 1341 is a total bar to this action. The Act provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

A reading of the Act and the opinion of the Court of Appeals in *Huber Pontiac, Inc. v. Whitler*, 585 F.2d 817 (7th Cir. 1978) would

clearly require dismissal of any request for equitable relief, e.g., injunctive or declaratory actions. However, under the recent decision in *Fulton Market Cold Storage Co. v. Cullerton et al.*, 582 F.2d 1071 (7th Cir. 1978), 28 U.S.C. § 1341 does not bar plaintiff's § 1983 suit for damages. Plaintiff here seeks damages for what he alleges to be an unconstitutional warrantless search and seizure by tax collection officials.

A state or county tax official will be liable for damages under § 1983 only if he violated the plaintiff's clearly established constitutional rights intentionally or with reckless disregard of those rights. The tax official must have personally acted with an impermissible motivation or with such intentional and reckless disregard of the plaintiff's clearly established constitutional rights that his action cannot be reasonably characterized as being in good faith. *Fulton Market, supra* at 1079–1080.

One problem reconciling *Huber* and *Fulton Market* is that in damage actions such as the one presently before the Court, the public officials may cite a state statute as being the justification for their conduct, thus a basis for good faith immunity. In evaluating defendants' good faith belief, I will necessarily have to decide whether the statute on which they relied was unconstitutional or at least whether their construction of the statute was unreasonable and their actions unconstitutional. Although my construction as to the statute's constitutionality is only the law of this case, presumably other state officers will not proceed under a statute if it is deemed not to be a defense to § 1983 liability. Thus, decisions in *Fulton Market* damage suits could have the indirect effect of restraining or suspending other state officials from certain tax collection processes. However, having concluded that *Fulton Market* allows plaintiff's damages claim under § 1983, I will proceed to analyze the constitutional violations alleged.

### DUE PROCESS CLAIM

Plaintiff's pro se complaint appears to raise two different objections to the seizure of his automobile. First, the seizure allegedly violated plaintiff's due process rights because he was not given a pre-seizure notice and hearing in a court of law wherein the tax debt could be proven. Secondly, the seizure allegedly violated plaintiff's Fourth Amendment rights in that the defendants did not have a warrant issued by a court when they entered plaintiff's garage without consent.

Illinois has by statute created summary proceedings for the collection of taxes. Ill. Rev.Stat. ch. 120, § 692 *et seq.* As stated in 84 C.J.S. Taxation § 686(b):

Laws providing summary remedies for the collection of delinquent taxes are not open to constitutional objection because they dispense with some of the formalities or ordinary judicial procedure, or cut off technical defenses, or authorize the seizure of property first, and a hearing afterward, provided the taxpayer is given an opportunity at some stage of the proceedings and before his rights are finally cut off, to contest the validity of the tax or his liability with respect to it; but a statute directly in conflict with a constitutional procedure is void . . .

Courts have long upheld summary delinquent tax collection proceedings, including the statutory method of distraint, against due process challenges. See, *Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Scottish Union and National Insurance Co. v. Bowland*, 196 U.S. 611, 25 S.Ct. 345, 49 L.Ed. 619 (1905); 72 Am.Jur.2d 169, State and Local Taxation § 868. Many Illinois cases have at least impliedly supported use of the summary proceedings of levy and distress. *See e.g., People ex rel. McDonough v. Chicago, Milwaukee, and Pacific Railroad Co.*, 354 Ill. 438, 188 N.E. 404 (1933); *Ream et al. v. Stone et al.*, 102 Ill. 359 (1882) and *Town of Geneva v. Cole*, 61 Ill. 397 (1871).

Illinois statutes provide a method of review, including administrative as well as judicial to determine whether the personal property was validly subject to tax and

assessed at the correct statutory rate. See Ill.Rev.Stat. ch. 120, § 575, *et seq.* It appears that the Illinois personal property tax procedure allows sufficient subsequent judicial review and a tax refund if necessary, so that the taxpayer's due process rights are protected. Ill.Rev.Stat. ch. 120, § 619 *et seq.* California's summary tax collection procedure was sustained over similar objections that it violated the taxpayer's due process rights. The Court in *Bomher v. Reagan*, 522 F.2d 1201 (9th Cir. 1975), held that the taxpayer's right to subsequent judicial review and a tax refund, if appropriate, satisfied due process requirements. The facts in *Bomher* are closely analogous to the present case. See generally *Comment, "Procedural Due Process and Tax Collection: An Opportunity for a Prompt Post Deprivation Hearing"*, 44 U.Chi.L.Rev. 594 (1977).

## FOURTH AMENDMENT SEARCH AND SEIZURE CLAIM

Assuming that this summary procedure to collect delinquent taxes withstands due process objections, the crucial issue in this case becomes whether the collector's warrant issued by a county treasurer as ex-officio county tax collector, is sufficient authority to enter upon and seize private property for payment of delinquent taxes even over the objection of the property owner. Put another way, does the Fourth Amendment to the United States Constitution require government authorities to obtain a warrant from a judicial officer in order to levy and seize personal property for tax delinquency whenever the property owner refuses them entrance.

The Revenue Act of 1939, Ill.Rev.Stat. ch. 120, §§ 651, 652, 657, 692, authorizes the County Treasurer as an ex-officio county tax collector to issue a collector's warrant which commands the town collector or deputy collectors, in case any person named in the collector's book shall neglect or refuse

to pay their personal property tax, to levy the same by distress and sale of the goods and chattels of such person.[1] Acting pursuant to such a "warrant" the collectors in this case were sent to the delinquent taxpayer's premises and seized his automobile. In this case there was no consent. Mr. Bormann refused admission to his garage and defendants allegedly forced open the garage door by breaking the lock to obtain entrance. While there is some question of the degree of force used, there is no doubt that the garage door was opened.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched and the person or things to be seized.

The United States Supreme Court has spoken to the issue of statutes which attempt to authorize warrantless searches or intrusions on private property. In *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Court held that a homeowner had a Fourth Amendment Constitutional right to insist that municipal health inspectors obtain a warrant to search and that the homeowners may not constitutionally be convicted for refusing to consent to the inspections. California had a statute which authorized warrantless searches pursuant to an administrative inspection program and there was, in addition, a statute making it a criminal violation for refusing to permit an inspection.

The Court analyzed the Fourth Amendment and found that "[t]he basic purpose of this Amendment as recognized in countless decisions of this Court is to safeguard the privacy and security of individuals against

---

1. A copy of the collector's warrant issued in this case is included as Appendix 1 to this opinion.

arbitrary invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which 'is basic to a free society.' " *Camara* at 528, 87 S.Ct. at 1730. The Supreme Court recognized that it was difficult to develop workable guidelines: "Except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." The *Camara* Court held that the individual and his private property are fully protected by the Fourth Amendment and the Court rejected an assertion that the intrusions were reasonable even if without a warrant. The Court found this argument to unduly discount the purposes behind the warrant machinery contemplated by the Fourth Amendment. The effect of authorizing this warrantless entry was to leave the occupant subject to the discretion of the official in the field and "[t]his is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search." *Camara* at 532–33, 87 S.Ct. at 1733.

■ *Camara* next addressed the question of what is required to show probable cause to justify issuance of a warrant. Probable cause is the standard by which the particular decision to search is tested against the constitutional mandate of reasonableness. The Court focused upon the governmental interest which allegedly justified the official intrusion upon the constitutionally protected interest of the private citizen.

In *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) the issue was whether the holding in *Camara* applied to a building used for commercial purposes. The Court stated: "[w]e explained in *Camara,* a search of private houses is presumptively unreasonable if conducted without a warrant. The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his pri-

vate commercial property." *See* at 543, 87 S.Ct. at 1739.

■ In the recent case of *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court affirmed the principles of *Camara* and *See.* The Court noted that it had already held that warrantless searches are generally unreasonable unless authorized by a valid search warrant. Furthermore, the Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. The Court found that:

> The reason [for the protection] is found in the "basic purpose of this Amendment . . . [which] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara* at 528 [87 S.Ct. at 1730]. If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards. It therefore appears that unless some recognized exception to the warrant requirement applies, *See v. City of Seattle, supra,* would require a warrant to conduct the inspection sought in this case.

Is there a recognized exception to the warrant requirement in the case of forced entrance to private property in order to obtain property to sell for delinquent taxes? The private home is certainly not a "pervasively regulated business" or an entity with a long tradition of close governmental supervision as described in *U. S. v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); and *Colonnade Catering Corp. v. U. S.,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). There is an expectation of privacy in the home unlike the public phone booth in *Katz v. U. S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). See *Moylan, The Fourth Amendment Inapplicable v. The Fourth Amendment Satisfied; The Neglected Threshold of "So What?,"* 1977 S.I. U.L.J. 75.

198

Government officials may argue here, as OSHA's Chief Administrator did in *Barlow's Inc.,* that the intrusion on to private property is reasonable even without a warrant. This is the same argument made in *Camara* and was rejected by the courts in both *Camara* and *Barlow's Inc.* The courts have consistently rejected the argument of administrative efficiency as a reason to permit warrantless searches.

In *Barlow's Inc.* the Court reaffirmed *Camara* and *See* that probable cause in the criminal law sense is not required for issuance of a warrant. "For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . inspection are satisfied with respect to a particular [establishment].'" [Citing *Camara, supra,* at 538, 87 S.Ct. 1727.]

In response to the argument that the protections afforded the privacy of the individual by a warrant are so marginal that they fail to justify the administrative burdens that may be entailed, the Court stated:

The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also a warrant would then and there advise the owner of the scope and objects of the search beyond which limits the inspector is not expected to proceed. These are important functions for a warrant to perform, functions which underlie the Court's prior decisions that the Warrant Clause applies to inspections for compliance with regulatory statutes.

■ A reading of *Camara, See* and *Barlow's Inc.* convinces me that a warrant is necessary before a tax collector may enter private property if the property owner refuses him admission. *See also, Hamrick v. Ashland Finance Co. of West Virginia,* 423 F.Supp. 1033 (S.D.W.Va.1976); *Laprease v. Raymours Furniture Co.,* 315 F.Supp. 716 (N.D.N.Y.1970); and *Miloszewski v. Sears Roebuck & Co.,* 346 F.Supp. 119 (W.D.Mich. 1972). *See generally, Watson v. Branch County Bank,* 380 F.Supp. 945, 969 (W.D.Mich.S.D.1974). The summary method of distraint as a means of collecting delinquent taxes is a different type of statute from the inspection statutes set forth in the Supreme Court warrantless entry decisions. However, no exception has been found which would permit me to vary from the general rule clearly established that absent an exception or consent, a government official cannot enter plaintiff's private property without a warrant.

The Illinois statutes are to be construed in a manner so as to uphold their constitutionality if possible. Although the statute does not specifically address the situation where a delinquent taxpayer refuses the collector entrance, the statute does command the collector to collect the taxes by various means, including levy and distress. In addition, the statutes allow for the issuance of a "collector's warrant" which purportedly authorizes the collector to seize the property pursuant to a levy and distress. To the extent the statutes may be construed as allowing nonconsensual entry of private property by government agents without a valid Fourth Amendment warrant, the statutes are unconstitutional.

The question of whether defendants can establish that they have qualified immunity in the circumstances of this case remains. The parties are granted thirty days to supply affidavits or memoranda on this question in view of the test set forth in *Fulton Market, supra.*

Appendix to follow.

APPENDIX I

OFFICE OF THE COUNTY TREASURER

SANGAMON COUNTY

STATE OF ILLINOIS

DISTRESS WARRANT FOR SALE

OF

PERSONAL PROPERTY TAXES

BORMAN, LELAND W.
6 SCOTT COURT
SPRINGFIELD, ILLINOIS

TAX CODE  A01
BILL NO.  6431

WHEREAS YOU HAVE FAILED TO PAY THE PERSONAL PROPERTY TAXES IMPOSED ON YOU WHEN DEMANDED PURSUANT TO THE REVENUE ACT OF 1939 AS AMENDED, IT IS NOW MY DUTY, AS SANGAMON COUNTY COLLECTOR, TO LEVY THE SAME, TOGETHER WITH THE COSTS AND CHARGES THAT HAVE ACCRUED THEREON, BY SEIZURE AND SALE OF YOUR PERSONAL PROPERTY.

, DEPUTY COLLECTOR IN AND FOR THE COUNTY OF SANGAMON, STATE OF ILLINOIS, IS HEREBY COMMANDED TO SEIZE YOUR PERSONAL PROPERTY.  SUCH PERSONAL PROPERTY WILL BE SOLD AT THE COUNTY BUILDING, SPRINGFIELD ILLINOIS, BY PUBLIC AUCTION NOT LESS THAN FIVE (5) DAYS FROM THE DATE OF THIS WARRANT.

SUCH PERSONAL PROPERTY MAY BE REDEEMED PRIOR TO THIS SALE BY PAYMENT IN FULL OF YOUR PERSONAL PROPERTY TAXES.

$526.48

IN WITNESS WHEREOF I HEREUNTO SET MY HAND AND THE SEAL OF THE OFFICE OF COUNTY TREASURER AND EX-OFFICIO COUNTY COLLECTOR IN AND FOR THE COUNTY OF SANGAMON, STATE OF ILLINOIS THIS 17TH DAY OF MARCH, A.D. 1977.

FRED H. TOMLIN, SANGAMON COUNTY TREASURER