**FAIR ASSESSMENT IN REAL ESTATE ASSOCIATION, INC.; J. David Cassilly; Lynn F. Cassilly, Plaintiffs,**

v.

**Gene McNARY; William A. Skaggs; Edmund J. Pung; Charles T. Schneider; Frank J. Antonio; Donald G. Williams; Tom R. Otto; Stephen C. Snyder, Defendants.**

No. 79–805C(2).

United States District Court,
E. D. Missouri, E. D.

Nov. 7, 1979.

David J. Newburger and Anne K. Silverstein, Newburger & Vossmeyer, St. Louis, Mo., for plaintiffs.

Andrew J. Minardi, Associate County Counselor, St. Louis, Mo., for defendants.

Michael L. Boicourt, Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., for defendants, Snyder, Williams & Otto.

## MEMORANDUM

NANGLE, District Judge.

This case is now before the Court on the motion to dismiss of several defendants. Plaintiffs brought this suit pursuant to 42 U.S.C. § 1983 alleging that defendants' acts and practices in connection with the taxing of real property in St. Louis County, Missouri have deprived plaintiffs of equal protection and due process of the law. Two specific practices of defendants are alleged to violate these constitutional guarantees: 1) properties with new improvements are assessed at approximately 33⅓% of their current market value, while properties without recent improvements are assessed at approximately 22% of their current market value, due to the fact that there has not been a general reassessment in the County since 1960; and 2) property owners who successfully appeal their assessment are specifically targeted for reassessment the next year. By these actions, defendants are alleged to have "maliciously, willfully, invidiously, systematically, knowingly, and intentionally" violated plaintiffs' constitutional rights.

Plaintiffs in this suit are Fair Assessment in Real Estate Association, Inc. ("FAIR"), and J. David and Lynn F. Cassilly. FAIR is a non-profit corporation whose purpose is to promote and encourage equitable enforcement of the property tax laws in Missouri. J. David and Lynn F. Cassilly, husband and wife, are owners of real property with recent improvements in St. Louis County. Plaintiffs J. David and Lynn F. Cassilly seek to recover actual damages in the amount of the alleged overassessments, plus punitive damages. Plaintiff FAIR seeks to recover the monies it has expended in its attempts to obtain equitable enforcement of the state real property tax law on behalf of its members.

Three groups of defendants are involved. Defendants Charles Schneider and Frank Antonio are the principal defendants. They are the present Tax Assessor in St. Louis County and his predecessor, respectively. It is their allegedly unlawful assessment of real property in St. Louis County which is the gravamen of this complaint.

Defendant Gene McNary is the Supervisor of St. Louis County. Defendants William Skaggs and Edmund Pung are the Director of Revenue of St. Louis County and his predecessor, respectively. These de-

fendants allegedly have supervisory responsibility over the assessor and have acquiesced in the assessor's illegal conduct.

Defendants Donald Williams, Stephen Snyder, and Tom Otto are members of the State Tax Commission. As members of the Commission, these defendants allegedly have supervisory responsibility over the other defendants with respect to the state property tax laws, and have allegedly refused to correct the illegal practices. These three defendants answered the complaint. All the other defendants filed the motion to dismiss now under consideration.

Defendants contend that this suit for damages is barred by the Tax Injunction Act, 28 U.S.C. § 1341. That Act provides as follows:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under the state law where a plain, speedy and efficient remedy may be had in the courts of such state.

This Act, by its very terms, prohibits this Court from entering an injunction which would enjoin, suspend, or restrain the assessment, levy, or collection of the property tax now in question. *28 East Jackson Enterprises, Inc. v. Cullerton*, 551 F.2d 1093 (7th Cir. 1977). It has also been held that this Act prohibits the granting of a declaratory judgment as to the collectability of a state tax. *Illinois Central R. Co. v. Howlett*, 525 F.2d 178 (7th Cir. 1975). See, also, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). The issue now presented is whether the Act prohibits a suit for damages in the circumstances presently alleged.

The Seventh Circuit has recently answered this question in the negative. *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978). In that case, plaintiff alleged that defendants had

> systematically, knowingly, intentionally, fraudulently and invidiously assessed its property at levels other than permitted by law and greatly in excess of the levels at which property in Cook County was generally assessed in those years. Id. at 1073.

The court reviewed the cases construing the statute, as well as its legislative history, and determined that permitting an action for damages would not run counter to the underlying policy considerations of the Act.

This Court must disagree with the conclusion reached by the Seventh Circuit, at least to the extent that plaintiffs attempt to apply it in this case. In *Cullerton*, the court summarized the purposes of the Tax Injunction Act as follows:

> The statute, its legislative history and significant cases indicate that the primary evil to be avoided is federal equitable relief which would disrupt the state taxing process. A federal court injunction or declaratory judgment would not only undermine and jeopardize a state's ability to collect its revenue but would also seriously damage the delicate balance inherent in our federalistic system of government. Id. at 1078.

The court concluded that allowing a damage action under the circumstances alleged would not interfere with those purposes.

In the present case, plaintiffs do not allege that they were discriminated against due to their race, ethnic background or political affiliation. Cf. *Cullerton*, id. at 1079. Rather, they are complaining that the system adopted by defendants results in over-assessments of their property. The relief sought comports with these allegations—actual damages to bring their tax payments into line with those of other taxpayers. In effect, the individual plaintiffs seek a refund of the alleged overpayments.

 It has been held that the Tax Injunction Act bars suits for refunds as well as anticipatory relief. *Kelly v. Springett*, 527 F.2d 1090 (9th Cir. 1975); *Bland v. McHann*, 463 F.2d 21 (5th Cir. 1972), cert. denied 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). Such a result is dictated by the underlying purposes of the Tax Injunction Act. To allow such suits would cause disruption of the states' revenue collection systems equal to that caused by anticipatory relief. State tax collection officials could be summoned into federal court

to defend their assessments against claims for refunds as well as prayers for punitive damages, merely on the assertion that the tax collected was willfully and maliciously discriminatory against a certain type of property. Allowance of such claims would result in this Court being a source of appellate review of all state property tax classifications. This Court can not condone such a result.

Property taxation is a subject which is best left to the states to perform in their own ways. The notion of "comity", so strongly reinforced by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is equally applicable in the present situation

> . . . a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. Id. at 44, 91 S.Ct. at 750.

It cannot be disputed that plaintiffs have means to rectify what they consider an unjust situation through the state's own processes. In fact, they have been largely successful in doing just that. Plaintiffs and similarly situated taxpayers have brought numerous suits in state courts challenging the prevailing system of property tax assessment.

In *Breckenridge Hotels Corp. v. Leachman,* 571 S.W.2d 251 (Mo. banc 1978), it was held that the rights of taxpayers such as plaintiffs were violated when their property was assessed at a percentage of current market value much higher than other property in St. Louis County. In *State ex rel. Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979), the Missouri Supreme Court directed the State Tax Commission to ensure that all property was properly reassessed. This direction prompted the passage of legislation to implement a general reassessment in the County. Senate Bill 247, et al. Vernon's Missouri Legislative Service 1979, No. 2, p. 367.

It is clear that plaintiffs' proper course for relief is through the state's channels. This Court should not interfere in the legitimate interests of the state in implementing its own property tax system. Cf. *Younger,* supra. To allow a suit under the present circumstances would be doing just that.

Plaintiff FAIR, as an alleged representative of property taxpayers, is obviously in the same position as the individual plaintiffs. Similarly, the defendants who answered the complaint rather than joining in the motion to dismiss now under consideration are in the same position as the moving defendants. Therefore, this suit will be dismissed in its entirety.