Wesley N. HEIAR, Kenneth I. Strauman, and Myrle E. Brown, Plaintiffs,

v.

CRAWFORD COUNTY, WISCONSIN, William Fillbach, as Sheriff of Crawford County, Robert G. Dillman, Individually and as a member of the Crawford County Board, Howard H. Egstad, Individually and as a member of the Crawford County Board, Avery R. Flansburgh, Individually and as a member of the Crawford County Board, Donald E. Hale, Individually and as a member of the Crawford County Board, Frank L. Hendricks, Individually and as a member of the Crawford County Board, Adrian Hoffland, Individually and as a member of the Crawford County Board, et al., Defendants.

No. 82-C-273.

United States District Court, W.D. Wisconsin.

March 3, 1983.

As Amended March 11 and April 14, 1983.

DeWitt, Sundby, Huggett & Schumacher by Jean G. Setterholm, Madison, Wis., for plaintiffs.

Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, by David Leo Uelmen, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

This is a civil action for monetary and equitable relief. Plaintiffs, each a former Deputy Sheriff for Crawford County, allege that their rights were violated when the Crawford County Board enacted a mandatory retirement resolution. Specifically, plaintiffs claim that defendants violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[1] Defendants' motion to dismiss these claims will be considered in this Memorandum and Order.[2]

1. Plaintiffs' claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, as well as plaintiff's statutory claims under 42 U.S.C. § 1983 and 1985 are not considered in this Memorandum and Order.

2. Defendants initially characterized their motion as a motion for summary judgment. However, defendants did not submit affidavits, find-

## FACTS

For the purposes of this motion, the allegations in the amended complaint are accepted as true.[3]

1. All three plaintiffs are citizens of the United States, residing in Prairie du Chien, Wisconsin. Prior to June 30, 1979, each was employed by Crawford County and the Crawford County Sheriff's Department as a Deputy Sheriff. Plaintiff Wesley N. Heiar was a Patrolman 4, plaintiff Kenneth I. Strauman was a Sergeant of Traffic, and plaintiff Myrle E. Brown was a Sergeant of Radio and Jailer.

2. Defendant Crawford County is a political subdivision and body corporate organized and existing under the Constitution and laws of the State of Wisconsin with its principal place of business in Prairie du Chien, Wisconsin. The County operates, finances and controls the Crawford County Sheriff's Department and provides for hiring, discharge, wages and working conditions of Deputy Sheriffs.

3. Defendant William Fillbach is the Sheriff of Crawford County and held that position at all times relevant to this case.

4. At all times relevant to this case, the following defendants were duly elected members of the Crawford County Board, the governing body of Crawford County: Robert G. Dillman, Howard H. Egstad, Avery R. Flansburgh, Donald E. Hale, Frank L. Hendricks, Adrian Hoffland, Nels Kvalheim, A.R. Lechnir, Obert Olson, Amel H. Oppriecht, John S. Young, and Harry M. Zabel. Robert G. Dillman also served as the Chairman of the Board, and defendants Hale, Kvalheim and Zabel, among others, comprised the Law Enforcement Committee of the Crawford County Board.

ings of fact or other matters outside of the pleadings. Therefore, the Court has construed the motion as a motion to dismiss. *See* Order of January 19, 1983.

3. Only those allegations relevant to the due process and equal protection claims are considered.

5. Plaintiff Heiar was born on September 15, 1922, plaintiff Strauman was born on May 24, 1924, and plaintiff Brown was born on September 29, 1924.

6. On or about February, 1971, plaintiff Heiar entered into a contract of employment as Deputy Sheriff for the County of Crawford with the expectancy of continued employment during satisfactory performance until age 70 unless terminated for cause by due process of law. Plaintiff Strauman entered into a similar contract on or about January, 1962, as did plaintiff Brown on or about January, 1969.

7. On or about April 9, 1979, defendant Crawford County signed an agreement with the Crawford County Sheriff's Department Local 1972 WCCME, AFS–CLE, AFL–CIO, covering the plaintiffs' positions for the years 1979 and 1980. The County agreed that plaintiffs would be demoted, suspended or discharged only for just cause. The agreement defined just cause as:

Theft of personal or public property, drinking on the job, or being drunk on the job.

The agreement did not provide for the dismissal of Deputy Sheriffs because of the attainment of a certain age.

8. On April 17, 1979 defendants Kvalheim, Zabel and Hale, acting as the Law Enforcement Committee of the Crawford County Board, proposed at the regular meeting of the Crawford County Board, and defendants Dillman, Egstad, Flansburgh, Hendricks, Hoffland, Kvalheim, Lechnir, Olson, Oppriecht, Young, and Zabel enacted the following resolution:

Now, therefore, be it resolved, that it is the policy of Crawford County, Wisconsin that all non-elective protective occupation participants in the employ of said county cease employment for said county on the day on which said protective occupation participants of the Wisconsin Republic [sic] Employees Retirement Fund reaches the age of fifty-five (55) years.

9. Pursuant to this resolution, plaintiffs Heiar and Strauman were discharged on June 30, 1979, and plaintiff Brown was discharged on September 30, 1979.

## OPINION

Before discussing the merits of plaintiffs' claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Court will address defendants' contention that individual members of the Crawford County Board should be absolutely immune from liability for alleged constitutional violations stemming from their enactment of the mandatory retirement resolution.

## I. LEGISLATIVE IMMUNITY

■ Plaintiffs contend that individual members of the County Board should receive, at best, only qualified good-faith immunity for the acts described in the amended complaint. *See Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants point out that the complaint, even if true, shows only that individual members of the County Board proposed or enacted legislation. Defendants argue that elected officials involved in such activities are entitled to immunity from suits claiming constitutional violations. This Court agrees.

### A. *History*

In 1951, the Supreme Court extended common-law immunity from civil liability to state legislators involved in legislative activities. *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Justice Frankfurter, writing for the Court, traced the historical roots of the privilege to speak and vote in the legislature without fear of liability for damages. He then explained the rationale behind this immunity:

Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment

**1178**

against them based upon a jury's speculation as to motives.

*Id.* at 377, 71 S.Ct. at 788.

Some twenty-eight years later, the Supreme Court again addressed the issue of legislative immunity. In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the defendants included individual members of the Tahoe Regional Planning Agency (TRPA), an entity created by agreement between the States of California and Nevada. TRPA was vested with the authority "to adopt and to enforce a regional plan for land use, transportation, conservation, recreation, and public services." *Id.* at 394, 99 S.Ct. at 1173 (footnote omitted). Landowners in the area under the jurisdiction of the TRPA instituted suit, claiming that its policies and practices caused them economic harm.

The Supreme Court held that the individual members of TRPA were protected by absolute legislative immunity. The high court rejected plaintiffs' contention that *Tenney* should be limited to state legislators or stems from state law: "Rather, the rule of that case recognizes the need for immunity to protect the 'public good.'" *Lake Country Estates,* 440 U.S. at 404–405, 99 S.Ct. at 1179. After quoting the language from *Tenney* cited earlier in this Opinion, Justice Stevens, writing for the Court, concluded: "This reasoning is equally applicable to federal, state and regional legislators." 440 U.S. at 405, 99 S.Ct. at 1179 (footnote omitted.)[4] Justice Stevens declined, however, to confront the issue now before this Court: "Whether individuals performing legislative functions at the purely local level, as opposed to the regional level, should be afforded absolute immunity from federal damage claims is a question

not presented in this case." *Id.* at 404, n. 26, 99 S.Ct. at 1178, n. 26.

Justice Marshall, in dissent, was disturbed by the fact that no member of TRPA was elected: "Thus, no member of the board is directly accountable to the public for his legislative acts." *Id.* at 407, 99 S.Ct. at 1180 (Marshall, J., dissenting in part). Justice Marshall also foresaw the instant case:

[T]he majority's reasoning in this case leaves little room to argue that municipal legislators stand on a different footing than their regional counterparts. Surely the Court's supposition that the "cost and inconvenience and distractions of a trial" will impede officials in the "'uninhibited discharge of their legislative duty,'" *ante,* at 405 [99 S.Ct. at 1179], quoting *Tenney v. Brandhove,* supra [341 U.S.], at 377 [71 S.Ct. at 788], applies with equal force whether the officials occupy local or regional positions. Moreover, the Court implies that the test for conferring unqualified immunity is purely functional. *Ante,* at 405 n. 30 [99 S.Ct. at 1179]. If the sole inquiry under that test is the nature of the officials' responsibilities, see *ibid.,* not the common-law and constitutional underpinnings of the privilege itself or the wisdom of extending it to nonelected officials, then presumably any appointed member of a municipal government can claim absolute protection for his legislative acts.[5]

*Id.* at 407–408, 99 S.Ct. at 1180 (Marshall, J., dissenting in part).

In two cases during the next year, the Supreme Court moved closer to Justice Marshall's predictions. First, in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Chief Justice, Justice Stewart, and Justice Rehn-

4. In a footnote, Justice Stevens wrote:
   This holding is supported by the analysis in *Butz v. Economou,* 438 U.S. 478 [98 S.Ct. 2894, 57 L.Ed.2d 895], which recognized absolute immunity for individuals performing judicial and prosecutorial functions within the Department of Agriculture. In that case, we rejected the argument that absolute immunity should be denied because the individuals were employed in the Executive Branch, reasoning that "[j]udges have absolute immunity not because of their particular loca-

tion within the Government but because of the special nature of their responsibilities." *Id.,* at 511 [98 S.Ct. at 2913]. This reasoning also applies to legislators.
   440 U.S. at 405, n. 30, 99 S.Ct. at 1179, n. 30.

5. Justice Marshall evidently would not be as alarmed by the extension of immunity in the present case, where each member of the Crawford County Board is directly accountable to the voters for his legislative acts.

quist joined Justice Powell's dissent. Justice Powell commented on the liability of a city councilman for statements made in the course of his duties on the city council: "Roberts [the councilman] himself enjoyed absolute immunity from § 1983 suits for acts taken in his legislative capacity. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 402–406 [99 S.Ct. 1171, 1177–79, 59 L.Ed.2d 401] (1979)." 445 U.S. at 664, n. 6, 100 S.Ct. at 1422, n. 6 (Powell, J., dissenting).

A few months later, the Supreme Court further demonstrated its functional approach to legislative immunity. In *Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), a unanimous [6] Court held that where the State's highest court exercises delegated legislative power to promulgate rules regarding attorney conduct, members of that court are entitled to absolute legislative immunity from liability under 42 U.S.C. § 1983. *Id.* at 734, 100 S.Ct. at 1975. Thus, the focus appeared to be the functional role of the defendant claiming legislative immunity, not the level of government or even the branch of government where the defendant works.[7]

Utilizing such a functional approach, recent decisions have accorded absolute legislative immunity to local officials acting in a legislative role. *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir.1980); *Hernandez v. City of LaFayette,* 643 F.2d 1188, 1193 (5th Cir. 1981) *cert. denied,* 455 U.S. 907, 611–612, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982);

*Gorman Towers, Inc. v. Bogloslavsky,* 626 F.2d 607, 611–612, (8th Cir.1980); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349 (9th Cir.1982).[8] *Contra: German v. Killeen,* 495 F.Supp. 822, 830–831 (E.D. Mich.1980).[9]

### B. *The Law in the Seventh Circuit*

The question of absolute immunity for local officials performing legislative acts is not settled in the Seventh Circuit.* In *McLaughlin v. Tilendis,* 398 F.2d 287 (7th Cir.1968), cited by plaintiffs, the Court of Appeals held that defendant members of a school board were not entitled to absolute legislative immunity, but were protected only by good faith immunity. *Id.* at 290. Using the functional approach suggested by the Supreme Court, *McLaughlin* was correctly decided. Defendants were accused of failing to rehire one teacher and dismissing another because of the employees' association with a teachers' union. These alleged acts were not in the nature of legislative acts in which the legislator is protected from civil liability for statements made or legislation passed. Instead, the school board members performed the essentially administrative role of hiring and firing individual employees. These defendants should not have been shielded from the consequences of such an administrative decision, except by good faith immunity.

In contrast, the individual members of the Crawford County Board are accused only of introducing, debating and adopting a resolution. These are precisely the kinds

---

**6.** Although no member of the Court dissented, Justice Powell did not participate in the case.

**7.** This functional approach is also manifest in recent decisions concerning prosecutorial and judicial immunity. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (federal officials responsible for decision to initiate or continue a proceeding subject to agency adjudication entitled to absolute prosecutorial immunity; those performing adjudicatory functions within a federal agency entitled to absolute judicial immunity).

**8.** *See Blake v. Town of Delaware City,* 441 F.Supp. 1189, 1200–1201 (D.Del.1977). *Cf.*

*Visser v. Magnarelli,* 542 F.Supp. 1331 (N.D. N.Y.1982) (purely administrative decision of city counsel outside the scope of absolute legislative immunity).

**9.** The *German* court, while noting *Lake Country Estates* and *Gorman Towers,* elected to rely upon cases decided prior to *Lake Country.*

* After the entry of this decision, the Court of Appeals for the Seventh Circuit resolved the issue of legislative immunity for local officials. After citing *Gorman Towers, Bruce, Hernandez,* and *Kuzinich,* the Court of Appeals wrote: 'We think these decisions are correct....' *Reed v. Village of Shorewood,* 704 F.2d 943 at 952 (7th Cir.1983).

of legislative activities entitled to protection by absolute legislative immunity.[10]

*McLaughlin,* in turn, relied upon *Progress Development Corporation v. Mitchell,* 286 F.2d 222 (7th Cir.1961). In *Mitchell,* defendant members of a local park board were accused of administering a building code and condemning certain land in violation of the civil rights of black residents. The Court of Appeals refused to clothe the park board members with legislative immunity:

> The common law immunity of state legislators for their acts, recognized in *Tenney v. Brandhove,* 1951, 341 U.S. 367, 378–379, 71 S.Ct. 783 [789] 95 L.Ed. 1019, does not extend to local officials charged with administering in a *discriminatory* manner the laws so as to preclude Negroes from moving into an all-white community.

*Id.* at 231 (emphasis in original).

As distinguished from the present case, the defendants in *Mitchell* were accused of acting in an essentially administrative, not legislative, capacity. The *Mitchell* defendants passed no laws—instead they carried out the law in an allegedly discriminatory manner. Therefore, legislative immunity was not appropriate. *Cf. American Civil Liberties Union v. City of Chicago,* 431 F.Supp. 25, 29–30 (N.D.Ill.1976) (where unelected members of the Police Board of the City of Chicago are accused of unlawfully gathering information and maintaining intelligence dossiers on legitimate activities of various organizations, absolute legislative immunity not available).

### C. *Policy Considerations*

■ Public policy also favors the recognition of absolute immunity for elected local officials performing legislative functions. Contrary to Justice Marshall's concern in *Lake Country Estates,* such officials are directly accountable to the public for their words and votes. In fact, the electoral process is a far stronger protection for the public where the legislator is local rather than state or federal. *Cf. Tenney,* 341 U.S. at 378, 71 S.Ct. at 789.

At the same time, many local legislators serve for little or no salary. Adding the risk of a lawsuit at every vote hardly makes the task more attractive. Local government should not be reserved for only those who can afford to hire lawyers and defend against potential personal liability.

Furthermore, absolute legislative immunity protects the legislative process from encroachment by or subordination to the judiciary or individual plaintiffs. For the good of the public, local legislators must be permitted to speak their minds and vote their consciences without fear of personal liability under 42 U.S.C. § 1983.[11]

Finally, no potential plaintiff will be disadvantaged by this immunity. He may still

---

**10.** Similarly, *Fulton Market Cold Storage Co. v. Cullerton,* 582 F.2d 1071 (7th Cir.1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), cited by defendants, does not speak to the issue now before this Court. In *Cullerton,* the Court of Appeals held that local tax officials were not absolutely immune from liability under 42 U.S.C. § 1983 for discriminatory property tax assessment:

> Quite clearly, if a county or state tax official intentionally and unjustifiably raised an individual's property assessment because of the individual's race, ethnic background or political affiliation, the official could be liable for damages under § 1983 for the misuse of his authority.

*Id.* at 1079. The setting of property tax assessments is surely not a "legislative" function; qualified good faith immunity is appropriate for a tax official performing such administrative duties. Furthermore, *Cullerton* was essentially overruled in *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).

**11.** *Accord: Ligon v. Maryland,* 448 F.Supp. 935, 947 (D.Md.1977):

> Because municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation ... [L]ocal legislators should be free to act solely for the public good without the spector of personal liability with the passage of each [ ] ordinance ... Collateral litigation of the [legislators'] motives, such as [this case], would subordinate the role of the legislative branch in contravention of our scheme of government. *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951).

seek his remedy against the municipality itself.[12] If liability is found, all taxpayers will pay the damages that the local officials, in the discharge of legislative duties in behalf of the public, may be found to have caused. Of course, local legislators must face the political consequences of this liability.

■ Thus, this Court holds that elected local officials are absolutely immune from suit under 42 U.S.C. § 1983 for alleged constitutional violations stemming from legislative acts. For the purpose of this holding, legislative acts include, but are not limited to, the introduction of, debate about, and voting on local legislation. Therefore, the motion to dismiss the due process and equal protection claims against individual members of the Crawford County Board is granted.[13]

## II. DUE PROCESS

■ Plaintiffs assert that the promulgation and enforcement of the mandatory retirement resolution violated their rights under the Due Process Clause of the Fourteenth Amendment. To prevail on this claim, plaintiffs must show: 1) that they had a property or liberty interest of constitutional magnitude in employment as Crawford County Deputy Sheriffs; and 2) that this interest was taken by defendants without a hearing or other appropriate process. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

Chief Judge Crabb, in *Jessen v. Village of Lyndon Station,* 519 F.Supp. 1183, 1186 (W.D.Wis.1981), ruled that a district court should consider plaintiffs' employment contract to determine "whether plaintiff had a constitutionally-protected property interest

in continued employment." Judge Crabb concluded that Jessen, the plaintiff-employee, had such a property interest by virtue of "a contract of permanent employment, providing that plaintiff could be removed only for cause after a hearing." *Id.* at 1186–87.

■ In this case, the allegations recited in Paragraphs 6 and 7, *supra,* if true, would establish a constitutionally-protected property interest in continued employment with Crawford County.[14] Therefore, the first *Roth* requirement has been met.

Furthermore, the complaint, liberally construed, alleges that no plaintiff received a hearing or individualized treatment prior to termination pursuant to the mandatory retirement resolution. Therefore, the second *Roth* requirement has also been met.

The motion to dismiss this count is denied.

## III. EQUAL PROTECTION

■ Plaintiffs claim that the mandatory retirement resolution violated their right to equal protection of the laws. Unfortunately for plaintiffs, the Supreme Court rejected this contention in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

Robert Murgia was a Massachusetts State Police Officer terminated on his fiftieth birthday by operation of a state mandatory retirement statute. The Supreme Court rejected Murgia's contention that this statute violated his rights:

> In this case, the Massachusetts statute clearly meets the requirements of the Equal Protection Clause, for the State's classification rationally furthers the purpose identified by the State: Through mandatory retirement at age 50, the leg-

---

**12.** If the [legislators] have enacted unconstitutional legislation, there is no reason why relief against [the regional agency] itself should not adequately vindicate [plaintiffs'] interests. See *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*Lake Country Estates,* 440 U.S. at 405, n. 29, 99 S.Ct. at 1179, n. 29.

**13.** Plaintiffs' agreement to strike defendant Hale from the amended complaint for failure to effect service is therefore superfluous.

The motion to dismiss as to defendant Fillbach will be denied pending further development of the record.

**14.** The Court expresses no opinion as to the availability of a liberty interest or as to other possible bases for a property interest.

**1182**

islature seeks to protect the public by assuring physical preparedness of its uniformed police. Since physical ability generally declines with age, mandatory retirement at 50 serves to remove from police service those whose fitness for uniformed work presumptively has diminished with age. This clearly is rationally related to the State's objective.

*Id.* at 314–315, 96 S.Ct. at 2567 (footnotes omitted).

As plaintiffs have presented no explanation of why *Murgia* should not control in this case as well, the equal protection claim will be dismissed.

### ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED as to the claim for violation of equal protection of the laws.

IT IS FURTHER ORDERED that defendants' motion to dismiss as to the claim for violation of due process of law is GRANTED as to defendants Dillman, Egstad, Flanburgh, Hale, Hendricks, Hoffland, Kvalheim, Lechnir, Olson, Oppriecht, Young, and Zabel, and in all other respects DENIED.